RULEY, JUDGE:
Claimant alleges damages in the amount of $25,000.00 due to changes in the requirements for obtaining a Master’s Degree in Correctional Counseling from the West Virginia College of Graduate Studies at Institute, West Virginia. These changes allegedly delayed her receipt of the degree for two years and she claims that, as a result, she was prevented from entering the job market for two years and suffered anxiety which has required medical treatment.
Claimant was admitted into the master’s degree program in the Summer Term of 1975. She received, following payment of tuition, a catalog of courses for 1974-75, which claimant used to familiarize herself with the master’s degree requirements to plan her courses. After a year of study, claimant enrolled in a Practicum Course. This was one of two degree requirements then remaining. The Practicum was listed as a three-hour course which claimant began in the first Summer School Term in 1976. Towards the end of that term, the class was informed that the course would extend through the Second Summer Term. There was no written notification of that change and a three-hour course usually lasts for one term. Respondent introduced into evidence the syllabus for the Practicum which states the amount of counseling hours required to pass the course and says, “it is likely that . two practicums would be needed to approximate this recommendation.” Dr. Michael Burton and Dr. John Zarski, the instructors for the Practicum, both testified that due to the shortened *413 nature of the summer terms, the Practicum extended over both.
Claimant alleges that she was inadequately supervised during the Practicum. The testimony established that one of the original instructors for the course resigned during the summer and Dr. Burton took over. Considerable confusion seems to have resulted; neither professor seemed sure who had primary responsibility for evaluating claimant’s work. They agreed, however, that her performance was not satisfactory at the end of the summer, and that she would need additional work.
Claimant also alleges difficulties in the administration of the Master’s Comprehensive Examination (MCE). She took the examination in June 1976, while working on the Practicum course. This was contrary to the school’s policy requiring completion of the MCE before taking the Practicum. Claimant was informed that she had failed one section of the MCE and would have to wait until the next examination date, October 9, 1976, to take that section again. She introduced other students who took the same examination, who testified that they were allowed to do additional research to successfully complete the examination, without having to wait until October. The examination was also graded on a plus-minus system, instead of the letter grade provided for in the course catalog. Claimant alleges that she was treated in an arbitrary manner by the school officials.
As a result, claimant filed a grievance against the college and was granted a hearing before the grievance committee on September 12, 1977. The committee chairman, Dr. William Crockett, testified that the department failed to follow the letter of the catalog with regard to the Practicum course and the MCE but that the claimant was not treated differently than other students. The committee recommended that the claimant be given a “C” in the Practicum course and be allowed to retake the failed portion of the MCE. These recommendations were followed and claimant completed her degree requirements in December 1977, receiving her diploma in May 1978.
*414 As a result of the delay between claimant’s anticipated graduation date of December 1977, and actual graduation date of May 1978, claimant alleges that she contracted a manic depressive illness which has resulted in hospitalization on two occasions. Claimant remains under medical treatment with therapy and medications; her prognosis is guarded. At the time of the hearing, claimant was unemployed as a result of her illness. Dr. Robert Ovington, the psychiatrist treating the claimant, testified that the claimant was vulnerable to the kind of psychotic breakdown she experienced when subjected to certain intense pressures. He suggested that there may be an hereditary predisposition to a manic-depressive condition. Furthermore, he testified that the home environment in which the claimant was reared contributed to her condition. Dr. Ovington stated that the troubles with West Virginia College of Graduate Studies were contributing factors to claimant’s mental problems.
Dr. Charles C. Weise examined claimant at respondent’s request. In his report, he stated that claimant’s illness appeared to be produced by a combination of biological, genetic, psychological, and sociological factors. An individual who is predisposed to the illness, in about 85% of cases, will have a depressed episode within six months of a negative life event, but in about 15% of cases depressed episodes do not have a negative event preceding them. Dr. Weise stated that it is conceivable that the conflict with the school could have precipitated an episode of illness but added, “I do not, however, feel that a negative event could produce a manic depressive illness in a person otherwise not vulnerable to it.”
The general rules of law applicable to this case are delineated in 15A Am. Jur.2d “Colleges and Universities” §31, where it is stated:
“* * * Where a student matriculates at a college or university, a contractual relationship is established under which, upon compliance with all the requirements for graduation, he is entitled to a degree or diploma. However, the faculty or other governing board of a college or university, which is authorized to examine the students *415 and to determine whether they have performed all the conditions prescribed to entitle them to a degree or diploma, exercises quasijudicial functions, in which capacity its decisions are conclusive, except that a degree or diploma may not be refused arbitrarily.”
Although the listing of the Practicum in the Bulletin for 1974-75 as a three-hour course may have been misleading and although various other items among the claimant’s litany of complaints may involve something less than excellence on the part of faculty or administration, the Court cannot conclude from all of the evidence that the delay in the award of claimant’s master’s degree was arbitrary. For that reason, the claim must be denied.
Claim disallowed.